**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**ADAM WENGUER**, individually and on behalf of
all others similarly situated,

    *Plaintiff,*

vs.

**S.E.N. INVESTMENT LLC, d/b/a 1000
DEGREES NEAPOLITAN PIZZERIA,** a Florida
Limited Liability Company, and **1000 DEGREES
PIZZERIA FRANCHISE, INC.,** a New Jersey
Corporation

    *Defendants.*

_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiff Adam Wenguer brings this action against Defendant S.E.N. Investment LLC,
d/b/a 1000 Degrees Neapolitan Pizzeria ("Defendant S.E.N.") and Defendant 1000 Degrees
Pizzeria Franchise, Inc. ("Defendant 1000 Degrees Franchise") (collectively, "Defendants"), to
secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §
227, and alleges as follows upon personal knowledge as to himself and his own acts and
experiences, and, as to all other matters, upon information and belief, including investigation
conducted by his attorneys and publicly available information.

**NATURE OF THE ACTION**

1.    This is a putative class action pursuant to the Telephone Consumer Protection Act, 47
U.S.C. § 227 et seq., (the "TCPA"), arising from Defendants' knowing and willful violations of the
TCPA.

2.    Defendant S.E.N. owns a pizza restaurant in Miami, Florida and is a franchisee of
Defendant 1000 Degrees Franchise.

3.      Defendant 1000 Degrees Franchise is a franchisor of the 1000 Degrees brand and is located in New Jersey.

4.      At issue here is S.E.N's automated text messaging marketing that was approved, consented to, controlled, and/or ratified by 1000 Degrees Franchise. Further, 1000 Degrees Franchise knowingly received and retained a monetary benefit from S.E.N.'s telemarketing activities.

5.      Defendants' telemarketing consists of sending text messages to consumers soliciting them to buy their food products.

6.      Defendants caused thousands of text messages to be sent to the cellular telephones of Plaintiff and Class Members who either never provided Defendants with consent to contact them.

7.      Defendants further sent messages to individuals that had requested that Defendants not text them any further.

8.      Defendants caused Plaintiff and Class Members injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

9.      Through this action, Plaintiff seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, given Defendants' alleged violations of a federal statute.  This Court also has subject matter jurisdiction pursuant to the U.S. Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and (d)(6), because there is diversity of citizenship and the claims of individual Class members, in the aggregate, exceed the jurisdictional minimum of $5,000,000, exclusive of interest and costs.

11.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction, and because Defendants provide and market their services within this District, thereby establishing sufficient contacts to subject them to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff and other members of the Class occurred within the State of Florida, thereby subjecting Defendants to jurisdiction in the State of Florida.

## PARTIES

12.     Plaintiff is a natural person who, at all times relevant to this action, was domiciled and resided in Miami-Dade County, FL and was a citizen of the State of Florida.

13.     Defendant S.E.N. Investment LLC is a Florida limited liability company whose principal office is located at 1510 SW 96th Terrace, Davie, FL 33324.  Defendant S.E.N. directs, markets, and provides its business activities throughout the State of Florida.

14.     Defendant 1000 Degrees Pizzeria Franchise, Inc. is a New Jersey corporation whose principle address is 170 South New York Road, Galloway, NJ 08205.  Defendant 1000 Degrees Franchise directs, markets, and provides its business activities throughout the State of Florida.

## THE TCPA

15.     Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), in response to a growing number of consumer complaints regarding certain telemarketing practices.

16.     Consistent with its purpose, the TCPA regulates, among other things, the use of prerecorded messages and use of text or "SMS" messaging. The TCPA was designed to prevent calls like the ones described within this complaint and to protect of the privacy of citizens.

"Voluminous consumer complaints about abuses of telephone technology…prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

17.     By enacting the TCPA, Congress made particular and specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243. § 7.

18.     To effectuate such findings, Congress found that, except in "emergency situations" or where the receiving party consents to such calls, "[b]anning…automated or prerecorded telephone calls…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Id. at § 12; see also Martin v. Leading Edge Recovery Solutions, LLC, 2012 WL 3292838 at* 4 (N.D. Ill. Aug. 10, 2012)(citing Congressional findings on TCPA's purpose); *Lardner v. Diversified Consultants Inc.*, 17 F.Supp.3d 1215 (S.D. Fla. 2014)(Same).

19.     47 U.S.C. § 227(b) proscribes telemarketing activities utilizing automated equipment. 47 U.S.C. § 227(c) proscribes telemarketing activities related to privacy rights not limited to the use of automated equipment. 47 U.S.C. § 227(c) instructed the Commission to create and implement rules and regulations effectuating congressional purposes. Those rules and regulations are found at 47 C.F.R. § 64.1200.

20.     Thus, the TCPA contains two separate causes of action relevant to phone calls and/or text messages – those found in 47 U.S.C. § 227(b) and those found in 227(c).

21.     Concerning the 227(b) cause of action, the TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

22.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

23.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

24.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

25.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express *written* consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

26.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff]

designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

27.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

28.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

29.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

30.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*.  *Id*.

31.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

32.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it

obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing*

*the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent

"for non-telemarketing and non-advertising calls").

33.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same

consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v.*

*Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message

falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc*.,

2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it

obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

34.     Like all Congressional tort actions, the TCPA incorporates vicarious liability

principles, including actual and apparent authority, and ratification. The FCC has made this point

explicitly, stating that a seller "may be held vicariously liable under federal common law agency

principles for a TCPA violation by a third-party telemarketer." *See In the Matter of the Joint*

*Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois,*

*N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA)*

*Rules*, 28 F.C.C.R. 6574, ¶ 24 (2013) (hereinafter "*2013 Dish Network Order*").

35.     As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.

*Id.* ¶ 37.

36.     The *2013 Dish Network Order* provides that a "telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's [auto-dialer] violations." *Id.* ¶ 46. This arises when the seller authorizes the telemarketer "to use the seller's trade name, trademark and service mark." *Id.*

37.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTS

38.     Defendants, acting within the scope of their contractual relationship, embarked upon an intrusive telemarketing campaign to promote their restaurants.

39.     On May 25, 2019, Defendants sent, or caused to be sent, the following telemarketing text message to Plaintiff's cellular telephone number ending in 9906 (the "9906 Number"):



40.     Defendants' text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

41.     The text message Defendants sent, or caused to be sent, to Plaintiff identified it as promoting "1000 Degrees Pizza Salad Wings."

42.     Defendants' text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services: specifically, the purchase of pizza.

43.     On May 25, 2019, Plaintiff asked to not be sent any further messages by responding "Please unsubscribe me[.]"

44.     However, Plaintiff received additional telemarketing text messages, including messages on May 28, 2019, June 4, 2019, and June 14, 2019.

45.     On June 14, 2019, Plaintiff again requested that he no longer receive messages by responding to Defendants' texts asking "Remove me from the list[.]"

46.     However, he received additional telemarketing text messages thereafter.

47.     Plaintiff received the subject texts within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district.  Upon information and belief, Defendants caused other text messages to be sent to individuals residing within this judicial district.

48.     At no point in time did Plaintiff provide Defendants with his express written consent to be contacted using an ATDS.

49.     Plaintiff is the subscriber and sole user of the 9906 Number, and is financially responsible for phone service to the 9906 Number.

50.     The impersonal and generic nature of Defendants' text message demonstrates that Defendants, or a third-party on Defendants' behalf, utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message

9

advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

51.     Specifically, the text message Defendants sent, or caused to be sent, does not identify the intended recipient by name nor provide any identifiable characteristic of the intended recipient. Instead the text message is drafted so that it can be sent out *en masse* without variation.

52.     The text messages originated from telephone number 833-719-7827, a number which upon information and belief is owned and operated by Defendants.

53.     The number used by Defendants is known as a "long code," a standard 10-digit phone number that enabled Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

54.     Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

55.     Further, upon information and belief, Defendants, or a third party on Defendants' behalf, utilized a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Defendants, or a third-party on Defendants' behalf, have the capacity to store telephone numbers using a random or sequential generator, and to dial such numbers without human intervention.

56.     Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendants' text messages also inconvenienced Plaintiff and caused disruption to her daily life.

57.     On information and belief, each of Defendant S.E.N.'s acts and/or omissions complained of herein were known, consented to, and/or ratified by Defendant 1000 Degrees Franchise. Further, Defendant 1000 Degrees Franchise knowingly received and retained monetary benefit of the transaction entered into as a result of both its business arrangement with Defendant S.E.N., and Defendant S.E.N.'s unlawful calling and telemarketing practices alleged herein.

58.     For example, on its website, Defendant 1000 Degrees Franchise states that one of the benefits of becoming a franchisee is Defendant 1000 Degrees Franchise's assistance with marketing, and states, among others: "Operations and marketing teams guide you through everything necessary to give you the greatest opportunity to succeed.  You will have access to assistance in all aspects of operating a 1000 Degrees restaurant, from training, pizza franchise marketing, day to day management operations and more."[1]

59.     As further example, one of the responsibilities of the franchisee is to contribute a monthly "2% toward Marketing Fees."[2]

## CLASS ALLEGATIONS

**PROPOSED CLASSES**

---

[1] https://www.1000degreespizza.com/pizzeria-franchise-faq/ (last visited June 26, 2019).
[2] Id.

60.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

61.     Plaintiff brings this case on behalf of a Classes defined as follows:

> **No Consent Class: All persons who from four years prior to the filing of this action until the date of a certification Order (1) were sent a text message to their cellular phone number by Defendants or on Defendants' behalf, (2) using the same equipment used to send the text messages to Plaintiff, (3) for the purpose of advertising Defendants' goods or services, (4) without their prior express written consent or with the same purported consent Defendants claim to have obtained from Plaintiff, if any.**

> **Revocation Class: All persons who from four years prior to the filing of this action until the date of a certification Order (1) were sent a text message to their cellular phone number by Defendants or on Defendants' behalf, (2) using the same equipment used to send the text messages to Plaintiff, (3) for the purpose of advertising Defendants' goods or services, (4) *after* making a request to Defendants to not receive future text messages**

62.     Defendants and their employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes but believes the members of the Classes number in the several thousands, if not more.

### NUMEROSITY

63.     Upon information and belief, Defendants have placed, or cause to be placed, automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

64.     The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery.  Identification of the members of the Classes is a matter capable of ministerial determination from Defendants' call records.

## COMMON QUESTIONS OF LAW AND FACT

65.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes.  Among the questions of law and fact common to the various Classes are:

**(1)** Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

**(2)** Whether Defendants can meet its burden of showing that it obtained prior express written consent to make such calls;

**(3)** Whether Defendants' conduct was knowing and willful; and

**(4)** Whether Defendants are liable for damages, and the amount of such damages.

66.     The common questions in this case subject to common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

67.     Plaintiff's claims are typical of the claims of the members of the Classes, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

68.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

69.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is

economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

70.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.   For example, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

71.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

72.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

73.     Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

74.     These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and the other members of the

putative Class as prior express consent was either never obtained or was revoked at the time Defendants' calls were made.

75.      Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

76.      Defendants knew that they did not have prior express consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

77.      All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

78.      As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**WHEREFORE**, Plaintiff Adam Wenguer, on behalf of himself and the other members of the Class, prays for the following relief:

a.  An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys as Class counsel;

b. Statutory damages of $500 per text;

c. Willful damages at $1,500 per text; and

d. Such further and other relief as this Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Members of the Classes hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the calls as alleged herein.

Dated: June 26, 2019

Respectfully submitted,

**IJH Law**

*/s/ Ignacio J. Hiraldo*_____
Ignacio J. Hiraldo
Florida Bar No. 0056031
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469
*Counsel for Plaintiff*

**HIRALDO P.A.**

Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*